Case number 24-1058, Secretary of Labor, Mine Safety and Health Administration, Petitioner v. Industrial TurnAround Corporation and Federal Mine Safety and Health Review Commission. Mr. Hartman for the Petitioner, Ms. Chilame for the Respondents. Good morning, may it please the Court. My name is Edward Hartman on behalf of Petitioner, the Secretary of Labor. After failing to timely contest a penalty assessment sent to its address of record, ITAC asked the Commission to reopen the final order, but provided scant facts and little reasoning to justify the extraordinary relief of reopening the case. Just as it did in Westfall Aggregates, the Commission abused its discretion by failing to engage with precedent and basing its decision on facts and arguments never presented by ITAC. This Court has to decide the matter under the Collateral Order Doctrine. This is a matter of great public importance. The matter is completely separate and apart from issues to be decided in a hearing on the merits and would effectively be unreviewable on appeal. I welcome the Court's questions. So, it seems to me that you would have to take the position that this entire category of orders would be collateral and immediately appealable. That is, any time the Commission grants a motion to reopen and remands, that would, in your view, be subject to an immediate appeal to us, that that's important and significant. Is that right? In an order, in a final order that is dealing with the Mine Act, Your Honor, yes, because... So, how many of these orders are we talking about per year that they're granting and remanding? I don't have an exact number on how many of these happen each year, but when in order, and they're not always contested by the Secretary of Labor. No, I understand that, but if you chose to contest it, it would be a collateral order that would be immediately appealable. And this one is $33,000. Theoretically, there could be a $5,000. Theoretically, Your Honor, but again, it just depends on the case itself and the reasonings given. Right, and depending on whether you choose to appeal. Correct, Your Honor, if we choose to appeal based on actions taken by the Commission. So, why is this important? This has to be important, it has to be weighty, it has to be significant. Correct, Your Honor. And you litigate these things all the time. This is not like other types of cases we found to be weighty and immunity cases where there's a right not to go to trial. So, if you make them go to trial and then appeal, that vitiates the right. Here, you litigate these things all the time. Correct, Your Honor, that's the job of the Secretary with regard to MSHA violations or violations of the Mine Act. What makes this important though, Your Honor, is the Mine Act was put in place in 1977 for the specific purpose of ensuring that there are timely assessments and timely payments of penalties and Congress determined that that was necessary to... So, how much of a delay are we talking about if you have to go litigate this? I'm sorry, Your Honor? You said the importance is the timing. So, how much of a delay would it be if you had to litigate this case as opposed to appealing right away? It would have to go back, it would have to go through discovery, it would have to go through any motions practice. So, the case would be sent back to the Secretary, they would file their petition for an assessment of penalties, and we start the whole process. So, I just want to make sure I'm understanding you. That is what you view is significant and weighty enough to make this a collateral order situation, that there would be some delay in getting this fine? No, Your Honor. The importance of it is that the Secretary and the miners have a right, if an order is made final by statute, by the Mine Act, to have finality in the case. That's the whole purpose of the Mine Act. There's a whole provision for reopening. There is, and if you do reopen the case, Your Honor, it's up to the petitioner or up to the operator or contractor to give detailed explanations of why it should be reopened. And in this case, they didn't do that. But you're just going to the merits. You just don't like the way it came out. That doesn't mean that this is a category of cases that's important or weighty. The category of cases, Your Honor, is protecting the Mine Act and ensuring that the Mine Act, put in place by Congress, is maintained. That the miners and the Secretary of Labor know that if an applicant or a contractor or an operator do not timely contest a citation or an assessment, it becomes a final order. So, Mr. Hartman, I mean, I'm interested here. Why does the Secretary of Labor here not contest the Commission's authority to reopen a final order? I mean, there's no provision in the argument that this is an important interest would be much stronger if the Commission had no authority to reopen in the first instance. But you seem to have conceded that they do have this reopening authority. Yes, Your Honor. The Commission has both determined they have the ability to reopen. And this Court has also allowed this. Well, the Court has just said that the Commission has recognized this authority. We've never really reviewed that issue. I think the Secretary of Labor contested whether the Commission had this authority in the original case, Jim Walters, that held where the Commission decided it had this authority. But where does this authority come from? And I'm interested in why the Department of Labor doesn't continue to challenge whether they have this authority. Your Honor, I think the Department of Labor has accepted the fact that there are times when a final order is adjudged or is deemed, and there may be good reasons for... There may be good reasons, but your argument is that you have an interest in the finality of these orders when the finality is set by statute. So why isn't the next argument that they just don't have reopening authority? Well, Your Honor, we're not saying that an applicant to reopen a final order may not have good cause or good reason to do that. There may be circumstances that rise to the level of granting the extraordinary relief. In this case, it does not. In this case, when ITAC petitioned the Commission to reopen the case, it simply said that you sent the assessment to the wrong address, and that's not the case. As the statute and regulations require... I just don't know how the Department of Labor gets past the third prong of Cohen, if you're not making a broader argument about the Commission's authority here. Because I'm not sure... Department of Labor is a government entity. It's trying to enforce its penalties. There's no important interest in the government not having to prove its penalties or to enforce the law. The department is choosing to enforce the penalty, and so it has to go through this process. Correct, Your Honor. How do you get past Cohen, the third prong of Cohen? Well, Your Honor, in this case, when they did not give a reason for not providing or contesting the penalty assessment, it's up to them to let them know and let the Commission know. And so when they don't do that, the Commission is supposed to take exactly... That's on the merits. But I mean, why is it an important enough issue to get within the collateral order doctrine? Well, because, Your Honor, Congress passed a statute to protect the nation's miners, and both the Secretary of MSHA and the nation's miners have an interest in making sure that these orders remain final. The whole purpose of the Mine Act is to protect the miners, and so it's very strict. I understand that default is a very harsh penalty, which... Let me ask you this, though. I mean, I'm just not that familiar with your regulatory regime, but you have a regulation that says that once the penalty is assessed, if it isn't challenged within 30 days, it becomes final. Correct, Your Honor. What's the statutory authority for that? Because wouldn't that be the same authority that would allow a regulation that says it can be reopened? It's the Mine Act, and it says the Commission is determined, and case law is determined, that the Commission may reopen extraordinary relief if good cause is shown. And so we accept that. We understand there may be that a final order... I'm sorry, Your Honor. No, no, please. There may be reasons, but it's up to... So it's all case law. There's no regulation or anything that allows reopening. Correct, Your Honor. And so we accept that, and that's been the standard practice for years. But if you're going to reopen a final order, you have to show extraordinary circumstances, and the Commission has to give detailed explanations if it's not going to follow its precedent. So... If there's an objection within the 30-day period, and the Commission believes that there's some merit to the objection, what happens then? Well, Your Honor, within the 30-day period of... And I see that I'm over my time, but if I can answer your question. If an operator receives an assessment, they have 30 days in which to contest it. If they contest it, they send a notice to MSHA, and then at that point, the litigation starts on the merits of the underlying citation. So within those 30 days, that's a timely contest. If they don't contest that within 30 days, it becomes a final order under the Mine Act. That's why we're here today, because under the final order, if they're going to petition the Commission to reopen a final order, they have to give sufficient justification for it. They just checked within the 30 days. You have all the same problems of delay that you're concerned with here. Well, the statute allows them to contest it. That's their right. They have a right to contest the citations. But if they... But you also have accepted, as you said, that the Commission has the right, you have the authority to reopen them. They do, following their own precedent of demanding or requiring just cause extraordinary circumstances to warrant reopening. And in this case... The objection is that basically that this is a very poor case, not a good candidate for reopening because of the weak nature of the case form for the... We argue that the ITAC did not contest within 30 days, and they gave no reason why they didn't contest. Their only reason why they didn't contest is because they said that the assessment was sent to the wrong address, and it was not. It was sent to their address of record. Seems that it's impossible, in your view, to separate the merits of their case from the finality. If they had a good case, it would not be... It would depend on the case, Your Honor. I mean, we can hypothesize of what excuses they're giving or what reasons they're giving, but in this case, they gave no reasons other than they alleged that MSHA sent it to the wrong address, and we did not. And at that point, they would have a duty to explain to the Commission why they haven't been at that address for 14 years. And in that regard, would that rise to reason to reopen the case? I don't know, but they never gave a reason for why they hadn't updated their address in 14 years, Your Honor. Mr. Herman, I just had one other question. I mean, why does this court have jurisdiction in a dispute like this that is essentially between two executive branch agencies, right? You have the Department of Labor suing the Commission, which I understand is a so-called independent agency, but is still part of the executive branch. I mean, where do we have Article III authority to decide a dispute between two entities within the executive branch? Your Honor, I would point to a Donovan case, which was the Secretary versus the Occupational Safety and Health Review Commission. This court looked at that case, exerted jurisdiction over that case, and it's two different agencies. It's mine safety versus occupational safety and health, but just like that case, Your Honor, we have a Secretary of Labor and Femsurich basically at loggerheads a disagreement on how to best work the Minac, Your Honor. And you think that's a proper Article III case or controversy? Yes, Your Honor. With that, thank you for the court's attention. Thank you. Good morning. May it please the court, my name is Adrienne Chalemi, and I'm here on behalf of Industrial Turnaround Corporation. I will refer to them as ITAC as we do in our brief. Our arguments this morning are threefold. Number one, in answer to Judge Rowe's question, this court does not have Article III jurisdiction to hear this appeal, and it should be dismissed. Number two, should this court decide to find that the category of cases that the Secretary argues should come within the collateral order doctrine, the Secretary did not abuse its discretion. If the court were to find that the Secretary abused its, excuse me, that the Commission abused its discretion, the appropriate remedy is remand to the Commission for further findings, as has been the case in other decisions involving this issue and the issue of reopening. I will note that the case law that is available deals with petitioners who are operators or independent contractors, such as ITAC, who have had their motions for reopening based on the 60B standard denied and not by the Secretary seeking under the collateral order to have an appeal from what is essentially a Rule 60B determination, essentially analogous to the vacating of a default judgment. Let me, I understand the Secretary hasn't challenged this here, but where does the Commission get its authority to reopen a judgment that's made final by the operation of law? That is something that the Secretary did not argue. I think the timing of the Loeb or Bright decision vis-a-vis when the briefs in this appeal were filed is certainly interesting, but the Secretary has not contested that the Commission may reopen. There are documents that might have been made as well that are available, I believe, to ITAC as to whether or not ITAC in fact received the penalty assessment here under the specific terms of the statute. If we were to review, if we were to find that we had jurisdiction and review the Commission's decision to reopen here under the abusive discretion standard, why wouldn't it be an abusive discretion if the Commission has exceeded its authority under 815A? Well, Your Honor, perhaps that might be the case. However, I would also, the argument that I would make there that was never fleshed out in the courts below, and perhaps this is another reason why if you are inclined to take jurisdiction of this case, the appropriate remedy is remand for consideration of these arguments as to whether or not there was an actual receipt of the penalty such that the reopening would even have been triggered. The word is receipt. The language of the statute, 30 U.S.C.A. 815A, governs the situation in which refusal by the operator or his agent to accept certified mail containing a citation and proposed assessment of penalty under this subsection shall constitute receipt thereof. There's no such statutory language dealing with the scenario which we have here, which is where some unknown person and my client has not been able, sort of scribbled, a scribbled address on the receipt or scribbled name on the receipt to determine who in fact took receipt of the penalty assessment. So there are a number of arguments, and again with the timing of all of this, we didn't, we assumed that the agencies were entitled to discretion on the question that you are asking about whether reopening is permissible under the standard, under the statute. We also assumed that the agency's position that, you know, receipt means if it's delivered to the certified address and the address of record and signed for, well it's signed for but not by my client's personnel. And do not believe that this case falls within the collateral order doctrine. The secretary has cited three other, I believe it's it's two or three other, three other appeals that are on the same issue pending before this court. My review of the court's docket located another one. So, you know, there are Article III concerns. There are concerns that have been expressed by the about the efficient administration of justice. I seriously question whether the efficient administration of justice suggests that this court should be taking up interlocutory rulings utilizing a Rule 60B standard. So if Judge Rao's insight is a correct one, which is that the commission doesn't have any authority to reopen because there's a statute that says once it's final it's final and shall not be reviewable. Is that a jurisdictional question that we have to consider in this case even though it hasn't been teed up by the parties? In which case would we need supplemental briefing or a remand? I think supplemental briefing or remand would be appropriate. I mean, I've sort of puzzled through this a little bit when I was considering what the impact of Loeb or Bright might be on this case. Would it simply be that they didn't have authority? So then we are before the court again appealing whether or not receipt under the statute means what they say receipt means. My question, I guess, is do we have to confront the issue that's been raised by Judge Rao in this case? No, I do not believe so because... But if they don't have authority to do it, we don't have jurisdiction and jurisdictional issues can't be forfeited or waived. Is that right? I believe that's correct. So it seems like we might have to confront that issue. Well, I mean, here ITEC is not directly challenging before this court the final default judgment. The Secretary of Labor is challenging the commission's reopening decision. Correct. So that there is no final determination there. We at the very least request supplemental briefing on the issue. Thank you. Any questions? All right. Thank you very much. Mr. Hartman, we'll give you some rebuttal time. Thank you, Your Honor. I apologize for not requesting earlier. Did I get your position on whether this is an issue that we have to address, whether the secretary and whether the commission even has authority to permit reopening? I believe that this court and the case is not at the tip of my tongue. I believe that this court has already determined that the commission has authority to reopen, to look at cases. Even if this court hasn't directly ruled on that, that this court has looked at decisions where the commission did reopen final orders. Drive-by jurisdictional rulings are not binding on future panels. Your Honor, but going back to what... I guess my question just is, if there's an issue here about whether the commission has authority to even ever reopen a case, even though the parties haven't briefed it here, is that something that we have to consider because it goes to our jurisdiction to decide this at all? Your Honor, we didn't brief that. If we do supplementary briefings, we're happy to do that. But this court does have a history of looking at cases that have been reopened by the commission. And so nobody has ever brought that up. ITAC has not brought that up, that there's no Article III jurisdiction for this court to look into this matter. We certainly did not brief it because we recognize that this court has jurisdiction and has looked at cases in the past. I would like to turn back quickly to the issue of ITAC wasn't sure who had signed for this document. It's been briefed out fully and it's clear in the regulations. It doesn't matter who signed for it, as long as MSHA sent it to the contractor's or the operator's address of record. And it's up to the contractor or operator to maintain that address of record. And the question before this court would be, why didn't the commission look into why didn't ITAC update its record for 14 years, its address for 14 years? Thank you. Your reply brief at page 12, you refer to three cases, the opposing counsel just mentioned, three cases filed in this pending, all filed in 2024. And are they procedurally identical to the current case? Are they cases in which the commission reopened final order? Yes, your honor. And it's similar issues that the commission has not followed its precedence and has not given detailed explanations for what it was doing. And in fact, Dino Noble, the first one, the last one listed is almost identical to this case, where again, they did not update their address. And so that was their excuse for not answering the assessment. So they are similar, your honor. And that's why this court should take this matter up because obviously under the final order, we don't want to get into piecemeal litigation. But in this case, this court can send the case back down. They can send it back down without remand because the commission did not follow its own precedence because they came up with reasons for ITAC. They came up with argument on their own. In fact, as we stand here today, we still don't know why ITAC did not update its address of record. We only know that the commission thought, well, this may be a reason why they didn't update their record. And so that's where this case hinges on, your honor. Thank you. Thank you. Thank you. Thank you. Case is submitted.
judges: Rao; Pan; Ginsburg